**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. DKC-22-429** |
| | * | |
| **OJ RASHAD GREEN,** | * | |
| a/k/a Rashaud Green, | * | |
| a/k/a "ICE," | * | |
| | * | |
| **Defendant** | * | |
| | * | |
| | * | |

**\*\*\*\*\*\*\***

**RESPONSE OF THE UNITED STATES IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPRESS TANGIBLE AND DERIVATIVE
EVIDENCE AND FOR A _FRANKS_ HEARING [ECF NO. 59]**

# Table of Contents

INTRODUCTION ................................................................................................................ 2

FACTUAL BACKGROUND .............................................................................................. 2

PROCEDURAL BACKGROUND ...................................................................................... 6

ARGUMENT ....................................................................................................................... 7

   **I. The Charles County Warrant Contained No False or Misleading Statements and the Defendant Has Not Met the Burden Entitling Him to a _Franks_ Hearing** ...................... 7

      **A.    Detective Harris' Charles County Search Warrant Affidavit Contained No False Statements and There Is No Evidence That Any Statement Was Made With Knowing, Intention, Or Reckless Disregard For The Truth** .............................................................. 9

      **B.    Even if the Court Deems Detective Harris' Statement to be False, the Charles County Search Warrant Affidavit Contains Ample Probable Cause** ............................ 11

   **II.    The Defendant is not Entitled to a _Franks_ hearing on the Federal Warrant and the Warrant Affidavit Contained Ample Probable Cause** .................................................... 12

      **A.    There Is No Evidence That the Federal Warrant Affidavit Was Written With Knowing, Intention, Or Reckless Disregard For The Truth** ......................................... 13

      **B.    Even if the Court Concludes that the Affiant Intentional, Knowingly, or Recklessly Omitted Information, the Inclusion of that Information Would Not Have Defeated the Affidavit's Probable Cause** ......................................................................... 18

      **C.    The Federal Warrant is Constitutionally Valid** .................................................... 19

# INTRODUCTION

The Court should deny the Defendant, OJ Rashad Green's motion to suppress tangible and derivative evidence and for a *Franks* hearing, ECF No. 59, because the two affidavits and search warrants at issue contained sufficient probable cause.

# FACTUAL BACKGROUND

## A. Investigation into the Defendant Begins

The Defendant's fentanyl distribution was initially investigated by the Charles County Sheriff's Office ("CCSO") in cooperation with the Drug Enforcement Administration ("DEA"). In December 2021, a confidential source ("CS1") told law enforcement that an individual named "Ice" was selling large quantities of fentanyl from his residence at in Accokeek, Maryland.[1]  Def. Ex. B (Federal Warrant and Affidavit) at ¶ 14.  In January 2022, another confidential source ("CS2") also told law enforcement that they knew of an individual named "Ice" who sold fentanyl in Accokeek, Maryland.  *Id.* at ¶ 15.  CS2 provided a physical description of "Ice" as a black male in his late 20s to early 30s, skinny, approximately 5'7', with dreadlock style hair, which matches the physical description of the Defendant.  *Id.*  CS2 advised that they knew of several people who obtained their fentanyl supply from "Ice."  *Id.*  When shown a picture of the Defendant, CS2 said the Defendant was "Ice."  *Id.*  Finally, CS2 provided "Ice's" phone number as ███-9009.

## B. Death of ██████████ and ████████████ 's Arrest/Interview

On February 7, 2022,  Maryland State Police ("MSP") responded to a call at a residence in Calvert County, Maryland after an individual, ████████████ (referred to as Victim 1 in the warrant), fatally overdosed on fentanyl.  ███████ 's grandfather told law enforcement that he had

---

[1] CS1 provided the Defendant's exact address.

taken ████ to the home of ████████████ — ████ 's cousin—earlier in that day.  *Id.* at ¶ 17.  On February 16, 2022, ████ was arrested, read his *Miranda* rights, and then interviewed by Maryland State Police Detectives Brandy Robinson and Kyle Morris and DEA Task Force Officer ("TFO") Cheyann Harris.[2]  Def. Ex. F (Transcript of ████████████ Interview, February 16, 2022).  ████ discussed his own drug use and Oxycodone drug sales.  *Id.* at 7-26.  He explained that he received his drug supply from "Ice", provided a description of "Ice", and noted that "Ice" lived in Accokeek, Maryland.  *Id.* at 12.  The detectives asked ████ about ████ 's death and the supply of drugs that lead to the death.  *Id.* at 27-54.  ████ initially stated that he *and* ████ met with "Ice" to purchase fentanyl on February 7, 2022.  *Id.* at 28.  ████ later corrected himself and told police that he alone met with "Ice" to obtain the fentanyl on February 7 and then later met and sold the fentanyl to ████  *Id.* at 28-31.  ████ explained how ████ used the fentanyl at ████ 's home.  *Id.* at 36-37.  ████ expressed his belief that ████ must have obtained additional drugs from other individual after leaving ████ 's home**,** presumably because ████ appeared "fine" to ████ when he left ████ 's house.  *Id.* at 37, 45.  Finally, ████ provided a phone number he had for "Ice" and explained that "Ice" changed his phone number every couple of days and also used out of state phone numbers.  *Id.* at 18-19.

## C.  Death of ████████████ and the Charles County Warrant

On February 14, 2022, law enforcement learned that an individual, ████████████ (referred to as Victim 2 in the warrant), died from a drug overdose on February 13, 2022.  Def. Ex. A (Circuit Court for Charles County Maryland search warrant) at Affidavit p. 3.  On February 18, 2022, law enforcement obtained a Circuit Court for Charles County Maryland search warrant to

---

[2] Sgt Harris served as a DEA TFO from approximately 2019 to October 2022 and was the case agent on the investigation into the Defendant until she returned to the Charles County Sheriff's Office following her time as a TFO.

search historical data records of the Defendant's ████-9009 phone number. *Id.* at 2. The search warrant sought evidence of Maryland Criminal Code §§ 5-601 (Possessing or administering controlled dangerous substance), 5-602 (Distributing, possessing with intent to distribute, or dispensing controlled dangerous substance), and 5-619 (Drug paraphernalia). *Id.* at 2. Detective Harris' search warrant affidavit detailed information obtained from CS1 and CS2, including "Ice's" ████-9009 phone number. *Id.* at Affidavit p. 3. During the investigation into ████ death, law enforcement interviewed ██████████████—friends of ████. In the Charles County search warrant affidavit, Detective Harris relayed statements ██████ made to other officers:

> [O]n February 13, 2022, at approximately 2300 hours, ████ met with him and ██████ at ██████████████████ ████ advised the three of them traveled together to meet with a drug dealer and bought a quantity of suspected heroin. ████ said the three of them then returned to ████████, and at approximately 0030 hours on February 14, 2022, and they all three snorted the drugs they had just purchased.

*Id.* at Affidavit pg. 4.

Later, Detective Harris summarized her own interview with ██████████ and wrote that:

> On February 14, 2022, ████████ told your affiant that the drug dealer they bought from was located in Accokeek, Maryland. ████████ described him as a short black male with dreadlock style hair. Your affiant checked call detail records previously obtained for the phone number provided for "ICE" by CI2, number ████-9009. Your affiant found that during the month of January 2022, ██████████ made numerous contacts with "Ice", the described drug dealer in Accokeek, Maryland, based on the phone number ████████ provided to Officer Watson of ████████.

*Id.*

In January 2023, ██████████ testified before a federal grand jury in Maryland. Def. Ex. H (Grand Jury Testimony of ████████). He testified that he would often buy drugs from "Ice" at "Ice's" home. *Id.* at 5-7. He further explained that, on February 13, 2022, he, ████████, and ████ drove to "Ice's" home to buy drugs. *Id.* at 9:17-18. When they arrived that

4

day, ██████ stated that "some white guy was there.  And he was like hey, he's not here, he left. So he's like, I'll take care of you." *Id.* at 10:8-10.  After ████████, ████████, and ████ obtained the drugs, they returned to ████████'s residence, used the drugs, and ████ was found unresponsive hours later. *Id.* at 10-11, 15-16.

## D. Controlled Purchases of Fentanyl from the Defendant and the Federal Search Warrant of the Defendant's Home

On December 29, 2022, a federal magistrate judge executed a search warrant for the Defendant's residence.  Def. Ex. B.   As with the Charles County search warrant affidavit, the federal search warrant affidavit detailed the investigation into the Defendant starting with information from CS1 and CS2 about "Ice" selling fentanyl in Accokeek, Maryland and his phone number. *Id.* at ¶¶ 14-16.  It outlined ████'s death and law enforcement's interview with ████████ on February 16, 2022. *Id.* at ¶¶ 17-20.  It referenced geolocation data which showed that ████'s phone and the Defendant's phone were in the same area on the day ████ died. *Id.* at ¶ 21.

Finally, the federal search warrant affidavit detailed three controlled fentanyl purchases from the Defendant to CS2—on March 3, May 17, and September 28, 2022. *Id.* at ¶¶ 22-39.  In each controlled purchase, audio and visual recording devices captured the exchange and CS2 identified the Defendant as the individual they purchased from. *Id.*  On March 3, 2022, CS2 purchased 5.515 grams of fentanyl from the Defendant. *Id.* at ¶ 26.  On May 17, 2022, CS2 purchased 3.009 grams of fentanyl from the Defendant. *Id.* at ¶ 32.  On September 28, 2022, CS2 purchased 12.6 grams of fentanyl from the Defendant. *Id.* at ¶ 38.  The federal search warrant was sworn by DEA Task Force Officer ("TFO") Timothy Mallicote.

Finally, the affidavit detailed how law enforcement conducted live video surveillance on the Defendant's home beginning in March 2022 through December 2022. *Id.* at ¶ 40. From the

surveillance, investigators believed the Defendant was conducting multiple fentanyl transaction on near-daily basis from his home.  *Id.*

## PROCEDURAL BACKGROUND

On December 14, 2022, a federal grand jury for the District of Maryland returned an indictment against the Defendant charging him with two counts of Distribution of a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).  ECF No. 1.  The Defendant had his initial appearance on January 4, 2023 and consented to detention on that date.  ECF Nos. 6, 10. On August 1, 2024, a superseding indictment was returned charging the Defendant with one count of Distribution of a Controlled Substance with Death Resulting in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and four counts of Distribution of a Controlled Substance in violation of 21 U.S.C. § 841(a)(1).  ECF No. 51.

On October 2, 2024, the Defendant moved to Suppress Tangible and Derivative Evidence and for a *Franks* Hearing. ECF No. 59.

# ARGUMENT

The Defendant is not entitled to a *Franks* hearing on the Charles County search warrant nor the federal search warrant and each contained sufficient probable cause. First, the Defendant has failed to establish that any statements in the Charles County search warrant affidavit were false, misleading, or made with reckless disregard for the truth. In fact, the warrant affidavit contained ample probable cause to search the Defendant's phone records for historical data and evidence relating to drug distribution. Second, the Defendant has failed to establish that any factual omissions in the federal warrant were made knowingly, intentionally, or with reckless disregard for the truth. Further, no additional details would have negated the sufficient probable cause to search the Defendant's home for drug related evidence. The Defendant's motion should be dismissed in its entirety.

## I.    The Charles County Warrant Contained No False or Misleading Statements and the Defendant Has Not Met the Burden Entitling Him to a *Franks* Hearing

A "presumption of validity" attaches "to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978). Because of this presumption of validity, "[a]n accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit." *United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011).

A *Franks* hearing offers criminal defendants a narrow way to challenge the validity of a search warrant. To receive such a hearing, "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171.

The defendant must make a "substantial preliminary showing" that (1) law enforcement made "a false statement" (2) the false statement was made "knowingly and intentionally, or with

reckless disregard for the truth"; and (3) the false statement was "necessary to the finding of probable cause." *See United States v. Moody*, 931 F.3d 366, 370–71 (4th Cir. 2019).

The first required showing, of falsity, cannot be conclusory and must rest on affidavits or other evidence. *Id.* (citations omitted). As a result, the defendant cannot rely on a purely subjective disagreement with how the affidavit characterizes the facts. Rather, there must be evidence showing that the statements at issue are objectively false. *Id.*

The second showing, requiring intentional falsity or reckless disregard for the truth, is just as demanding. *Id.* at 371. An innocent or even negligent mistake by the officer will not suffice. *Id.* (citations omitted). And, here too, the defendant must provide facts—not mere conclusory allegations—indicating that the officer subjectively acted with intent to mislead, or with reckless disregard for whether the statements would mislead, the magistrate. *Id.* (citation omitted).

Finally, the defendant must show materiality—that is, that the false statements were "necessary to the finding of probable cause." *Id.* (quoting *Franks*, 438 U.S. at 156). A district court may not hold a *Franks* hearing where, after stripping away the allegedly false statements, the truthful portions of the warrant application would still support probable cause. *Id.* This limitation reflects the ultimate purpose of *Franks*: "to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause." *Id.* (quoting *United States v. Friedemann*, 210 F.3d 227, 229 (4th Cir. 2000)). "[T]he presence (or absence) of probable cause is not the proper subject of a *Franks* hearing." *United States v. Haas*, 986 F.3d 467, 475 (4th Cir. 2021).

Here, not one of the requirements for *Franks* hearing on Detective Harris' Charles County search warrant affidavit is met.

**A. Detective Harris' Charles County Search Warrant Affidavit Contained No False Statements and There Is No Evidence That Any Statement Was Made With Knowing, Intention, Or Reckless Disregard For The Truth**

According to the Defendant, by including the following sentence in her Charles County search warrant affidavit, Detective Harris was asserting that the Defendant was present for ████ ████'s February 13, 2022 purchase of fentanyl:

> "On February 14, 2022, ████████ told your affiant that the drug dealer they bought from was located in Accokeek, Maryland. ████████ described him as a short black male with dreadlock style hair. . .Your affiant found that during the month of January 2022, ████████ made numerous contacts with "Ice", the described drug dealer in Accokeek, Maryland. . ."

Def. Ex. A at Affidavit p. 4.

The Defendant argues that the statement is false because on February 13, 2022—while ████████ did go to the Defendant's home to buy drugs—when he arrived a white man exited the home and gave ████████ the drugs, not a black male with dreadlock style hair.

However, the affidavit does not state that the drug dealer ████████ bought from *on February 13, 2022* was a black male with dreadlock style hair. It simply states that ████████ bought drugs from such a person, period. That fact—that ████████ bought drugs from a black male with dreadlock style hair ("Ice")—is true and consistent with ████████'s testimony before the federal grand jury. *See* Def. Ex. H (Grand Jury Transcript-████████) at 6:1-2 ("Q: And do you sometimes buy drugs from Ice? A: Yeah."); 6:5-6:11 ("Q: And can you just describe a typical purchase, if there is one, from Ice? Like how would it start? How would you initiate contact with Ice?" A: "Either phone or just go over there and just run in and grab it. Q: When you say over there, do you mean Ice's house? A: Yeah, the house over there."); 6:21-23 (Q: "Is it fair to say that most of the time you purchased drugs at Ice's house? A: Yeah.").

Further, in the paragraphs proceedings the affidavit statement at issue, Detective Harris summarized ████████████'s discussions with Charles County Officer Wilson. Def. Ex. A at 4. In the first of those paragraphs, Detective Harris specified the date and time ("February 13, 2022, at approximately 2300 hours") that ████████████ was referring to when he spoke with Officer Wilson about that specific drug purchase. In contrast, in the affidavit statement at issue, Detective Harris does not specify that ████████████ was relying his drug purchase from February 13, 2022. Again, it was just that he bought drugs from a black male located in Accokeek, Maryland with dreadlock style hair.

The Fourth Circuit grappled with a similar affidavit statement made in *United States v. Moody*. 931 F.3d at 371. In *Moody*, the defendant argued that the following sentence in the affidavit at issue should be read to assert that the defendant was present for a sale of heroin:

> During this controlled purchase, MOODY and other co-conspirators (two unidentified black females) were observed leaving from 1212 Lindsay Ave Portsmouth, VA and surveilled traveling to the pre arranged location and selling the Informant heroin.

*Id.* at 369.

The 4th Circuit reasoned that there was ambiguity in the sentence. *Id.* at 371. It was unclear whether the defendant left the house, traveled to the buy location, and sold heroin or just did one of those three acts. *Id.* The Court concluded that "warrant affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. They must be interpreted in a commonsense manner, neither held to the standard of what judges or lawyers feel they would have written if given the opportunity nor judged as an entry in an essay contest. *Mere imprecision does not, by itself, show falsity*." *Id.* at 372 (internal citations and quotations omitted) (emphasis added).

The same principal applies here. The fact there may have been ambiguity in the Detective Harris' statement does not mean the statement is false.

Even assuming that the affidavit was false, the Defendant has failed to show intentional falsity or a reckless disregard for the truth by Detective Harris. *See Moody*, 931 F.3d at 372. The Defendant argues that since Detective Harris spoke directly with ███████, she cannot "claim that she misunderstood or misstated information provided to her from another officer." ECF No. 59 (hereinafter "Def. Mo. to Sup.") at 16.  However, Detective Harris honestly described what ███████ told her—that the drug dealer he bought from was located in Accokeek, Maryland and was a short black male with dreadlocks.  "*Franks* requires only that the government affiant reasonably believe the allegations to be true." *United States v. Chavez*, 902 F.2d 259, 265 (4th Cir. 1990).  Based on ████'s statement to Detective Harris, her belief in her affidavit statement was reasonable.  And, again, ████ later testified to the same affect before a grand jury. The Defendant's argument fails to show how Detective Harris intentionally or recklessly made the statement at issue to mislead the Chares County judge.

The Defendant has failed to establish any false statement or any statement made with intentional and knowing or reckless disregard for the truth in the Charles County search warrant affidavit and the Court should deny the Defendant's request for a *Franks* hearing on that warrant.

**B. Even if the Court Deems Detective Harris' Statement to be False, the Charles County Search Warrant Affidavit Contains Ample Probable Cause**

Even if the Court were to believe that Detective Harris "falsely or recklessly made. . . statements and sought to mislead the state court judge, [her] affidavit nevertheless makes an ample showing of probable cause" for the Charles County search warrant.  *See United States v. Allen*, 631 F.3d 164, 172 (4th Cir. 2011) (holding that any inaccurate statements in an affidavit were unnecessary for a probable cause finding and affirming the district court's denial of a *Franks* hearing).

The Defendant argues that the only connection between Defendant's phone and ███ overdose was ███████'s statement.  Def. Mo. at 16.  Contrary to the Defendant's argument, ████████'s statement was not the only link to the Defendant's ████-9009 phone number. The search warrant affidavit explained that two confidential sources ("CS1" and "CS2") knew of a black male who went by the name "Ice" who sold fentanyl in Accokeek, Maryland.  CS1 provided an address for "Ice" and described "Ice's" vehicle.  CS2 described the physical appearance of "Ice" and explained that several people obtained their fentanyl supply from "Ice". CS2 also provided an approximate address for "Ice" and the ████-9009 phone number.   The Charles County search warrant sought evidence of drug distribution in the Defendant's phone records.  CS2's detailed information alone provided enough probable cause to search the 9009 phone number Verizon account for such controlled substance related evidence.  Thus, ███ ████'s statements about his drug purchases only supplemented the probable cause in the affidavit.

The Defendant is not entitled to a *Franks* hearing on the Charles County search warrant.

## II.    The Defendant is not Entitled to a *Franks* hearing on the Federal Warrant and the Warrant Affidavit Contained Ample Probable Cause

The federal warrant sought to search the Defendant's home for evidence relating to drug distribution.  Def. Ex. B. at 19-20.  The warrant affidavit, sworn by TFO Mallicote, referenced facts derived from ████'s cousin, ██████████.  The Defendant argues that he is entitled to a *Franks* hearing on the federal warrant because it omitted facts that negated ████'s credibility and omitted information that two separate phones numbers were potentially related to the Defendant.  Def. Mo. at 12, 18-19.   Secondarily, the Defendant argues that the federal search

warrant relied on information gleaned from the Charles County search warrant and included stale probable cause making it constitutionally invalid.

### A. There Is No Evidence That the Federal Warrant Affidavit Was Written With Knowing, Intention, Or Reckless Disregard For The Truth

There is no evidence that the federal warrant affiant intended to mislead the federal magistrate judge by not including additional details about ███████████ or about how he relayed information to law enforcement in his interview.

If—as is the case here—a defendant seeks a *Franks* hearing based on a purported omission in the affidavit, the "heavy burden is even harder to meet." *Haas*, 986 F.3d at 474 (denying *Franks* hearing where affiant omitted criminal history of FBI informant whose information was included in the affidavit). "In that situation, a defendant must provide a substantial preliminary showing that (1) law enforcement made an omission; (2) law enforcement made the omission 'knowingly and intentionally, or with reckless disregard for the truth,' and (3) the inclusion of the omitted evidence in the affidavit would have defeated its probable cause." *Id.* (quoting *Colkley*, 899 F.2d at 300-01).

Because courts do not expect affiants to include "every piece of information gathered in the course of an investigation" in an affidavit, "the 'mere fact' that the agent did not include every piece of information known about [the defendant] in the affidavits 'does not taint the[ir] validity.'" *Id.* (quoting *Colkley*, 899 F.2d at 300-01) ("And the mere fact that information was omitted from an affidavit cannot alone show recklessness or intentionality.")

***Cooperator or Informant.*** As a threshold matter, ███████████ was not, nor is he currently, a cooperating witness or informant for the Government. There is no cooperation agreement between the Government and ██████ nor has he been made a single promise or

received any benefit from the Government during the course of this investigation.   The Defendant's references to ████ as a cooperator are inaccurate.

**_Statements Made to Law Enforcement_**.    During his first interaction with law enforcement, about a week after the death of his cousin, ████ incorrectly recalled how the drug transaction with the Defendant occurred on February 7, 2022, whether out of a kneejerk desire to somehow reduce his own culpability or out of genuine failure to recall.  *See* Def. Ex. F at 29-31.  At first, he said that both himself and ████ met with the Defendant to buy the drugs.  *Id.* at 29-30.  Then, he stated that he met the Defendant alone, without ████ and ████ only met with ████ later at ████'s home to take the drugs.  *Id.* at 31:8-23.  ████ then expressed his confusion about how the small amount of drugs ████ had when he left ████'s home could have caused his death.  *Id.* at 37:17-20.  He then inferred that ████ must have obtained more drugs from someone else before he died.  *Id.* at 37:17-20; 45:5-8.  ████'s multiple statements to law enforcement, after this initial incorrect statement about how the drug purchase occurred, by-and-large, have been consistent and in line with other Government evidence.

There is simply no evidence that TFO Mallicote intended to mislead the federal magistrate judge—as the Defendant argues—by not including those details.  "'The mere fact that the affiant did not list every conceivable conclusion does not taint the validity of the affidavit.' *Franks* protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate." *Colkley*, 899 F.2d at 301 (quoting *United States v. Burnes*, 816 F.2d 1354, 1358 (9th Cir.1987)).

As the 4th Circuit reasoned in *Colkley*,

> While omissions may not be *per se* immune from inquiry, the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory. This latter situation potentially opens officers to **_endless_**

*conjecture* about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit. The potential for endless rounds of *Franks* hearings to contest facially sufficient warrants is readily apparent. *Id. (internal citation omitted) (emphasis added).*

The Defendant's assertion about the omitted details is exactly the sort of "conjecture" that the 4th Circuit cautioned. *Id.* The affidavit is not misleading simply because it does not contain every detail of ███████'s interview with law enforcement.

***Arrest and Criminal History***. Finally, the Defendant has presented no evidence that the affiant "subjectively knew" that his failure to include the fact that ███████ had been arrested and his potential criminal exposure in this case would mislead the magistrate. *See Haas*, 986 F.3d at 477 (holding that and "nothing about [the informant's] unrelated criminal history so undermined her credibility that we otherwise question the agent's subjective intent.")

The Defendant cites three cases where affiants omitted facts about an informant's non-credible behavior leading the court to conclude that the omission was reckless. In each of those cases, the affiants omitted credibility details that were directly intertwined with establishing probable cause. That is not the case here.

In *Lull*, a confidential informant conducted a controlled buy from the defendant. When the informant completed the purchase, police detectives searched his person and realized that the informant had pocketed $20 from the cash given to him by the detectives to conduct the controlled purchase. The informant was immediately terminated as an informant and arrested. Half an hour later, a detective drafted a search warrant for the defendant's residence and failed to include the informant's theft or arrest. The court reasoned that the informant demonstrated how unreliable he was during the course of the same transaction described in the affidavit and

was then formally deemed unreliable and terminated as a confidential informant. The Court concluded that the detective's omission was at least reckless. *Id.* at 117.

In *Clark*, a confidential informant told law enforcement that he had driven someone to a parking lot to by heroin from an individual assumed to be the defendant. *United States v. Clark*, 935 F.3d 558, 564 (7th Cir. 2019). The police then conducted their own surveillance but never saw a drug deal and conducted no controlled purchases of drugs. Thus, the informant was the sole source of drug trafficking information. The investigator's affidavit failed to mention any of the informant's credibility issues such as the fact that he was being paid, had two pending criminal charges against him, fifteen prior convictions, and a history of opiate and cocaine abuse, and he was hoping to receive a reduced sentence in exchange for his cooperation. The court reasoned that since there was no corroboration of the informant's information, the omission of further details about the informant permitted an inference that the omission was reckless or deliberate. *Id.* at 566.

In *Glover*, a confidential information told law enforcement that a man later identified as the defendant was a felon and had two firearms in his home. *United States v. Glover*, 755 F.3d 811, 814 (7th Cir. 2014). A police officer only corroborated the informant's information by showing the informant a picture of the defendant, confirming the defendant's address, and confirming his criminal history. *Id.* The affidavit omitted facts about the informant's credibility, like the fact that he had committed four crimes while serving as an informant and had used aliases when questioned by police officers. *Id.* at 815. Again, without sufficient corroboration, the Court deemed the amount of probable cause insufficient. *Id.* at 818.

Thus, the affidavit omissions in *Lull*, *Clark*, and *Glover* involved either explicit lies a confidential informant made that formed the basis of the investigation or the affidavits omitted a

confidential informant's credibility *and* included no or little corroboration of the probable cause

basis.  None of that is present in the Defendant's case.  Indeed, as detailed below (*infra* at Section

II, B),   police corroborated the information ███████ provided with information from two

confidential sources and three separate controlled purchases directly from the Defendant at the

Defendant's home (the target premises for the federal search warrant).

 ***The Defendant's Phone Numbers***.  Finally, in additional to ██████'s statements to law

enforcement during his interview, the Defendant argues that the federal warrant affidavit should

have included the inference that, since the ███████-4203 phone number ████████ had saved for

"Ice" was different than the ███████-9009 phone number law enforcement had for "Ice" (derived

from CS2 and phone records), then ████████ could not have been communicating with "Ice" as he

said he did.

 However, "Ice" frequently changed his number and TFO Mallicote stated in his affidavit

that he knew "through training and experience that it is common for drug dealers to have more

than one cellular phone and phone number to help them evade law enforcement."  *See* Def. Ex.

A at 18:23-19:10 ("FEMALE VOICE: How do you contact him? MR. █████████ Normally I

got his number or I'll got to contact my cousin who will contact him. Because he changes his

number, ever like couple of days he'll change it. Like, he always uses out of state numbers. He'll

use like New York numbers, Florida numbers. FEMALE VOICE: So you can call him or you

have to go through your cousin? MR. ███████ As long as he has the same number.  It's like,

he'll change his number (inaudible) he'll call me or text me and say, you know, it's Ice, like,

(inaudible) new number or he'll do stuff like that. Where I just gotta delete his other one and keep his one.); Def. Ex. B at ¶ 19.

Thus, the suggested inference the Defendant urges the Court to make is baseless—the Defendant simply had multiple phone numbers where he could be contacted.

**B. Even if the Court Concludes that the Affiant Intentional, Knowingly, or Recklessly Omitted Information, the Inclusion of that Information Would Not Have Defeated the Affidavit's Probable Cause**

There is simply no showing that "the inclusion of the omitted evidence in the affidavit would have defeated its probable cause." *Haas*, at 986 F.3d at 474. Whether or not ███ met with the Defendant alone or with ███ would not have defeated probable cause to believe the Defendant was distributing or dispending drugs from his home. ███'s statement that ███ must have obtained drugs from another source based on his observation that Dodson appeared fine upon leaving his house would not have defeated it either. And that ███ was arrested and had a different phone number for the Defendant also would not have made a difference. The Defendant's argument that those omitted facts would have negated the probable cause to search his home is baseless. *See Colkley*, 899 F.2d at 301 ("[o]mitted information that is potentially relevant but not dispositive is not enough to warrant a *Franks* hearing.") (citation omitted).

Further, the federal warrant affidavit contained plenty of additional facts establishing probable cause to search the Defendant's home for distribution and dispensing of controlled substances. Def. Ex. B at 6-13. Like the Charles County warrant affidavit, it detailed the information gleaned from CS1 and CS2 about "Ice" and his residence. *Id.* at ¶¶ 14-16. It detailed how ███ received fentanyl from the Defendant and sold it to ███ who later overdosed. *Id.* at ¶¶ 17-18. It included the phone number ███ had for the Defendant ((███ 4203) *Id.* It

explored how ▮ identified the Defendant in a photograph, pointed out the Defendant's home during a drive by with law enforcement, and how that home matched details provided by confidential sources. *Id.* at ¶ 20. The affidavit detailed how ▮'s cellphone was located in the same location as the Defendant on the day of ▮'s death. *Id.* at ¶ 21. Finally, TFO Mallicote spent five pages detailing three controlled purchases from the Defendant. *Id.* at p. 8-12. Those controlled purchases occurred on March 3, 2022, May 17, 2022, and September 28, 2022 and law enforcement bought approximately 21 grams of fentanyl from the Defendant. *Id.* A *Franks* hearing is unwarranted.

### C. The Federal Warrant is Constitutionally Valid

The Defendant makes two final and futile arguments for why the federal warrant lacks probable cause and should be suppressed. First, that it is constitutionally invalid because it relied on information from the Charles County warrant. Second, that the federal warrant probable cause was stale as the last controlled purchased was three months before the search warrant execution.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. When reviewing the validity of a search warrant, the district court's role is "not to conduct a *de novo* determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984); *United States v. Lawlor*, 996 F.2d 1578, 1581 (4th Cir. 1993) (the question is "whether the magistrate judge had a substantial basis for the decision").

The magistrate judge's decision to issue the warrant is given "'great deference,'" and it should not be invalidated "'by interpreting [an] affidavi[t] in a hypertechnical, rather than a

common sense, manner.'" *Lawlor*, 996 F.2d at 1581 (alterations in original) (quoting *Gates*, 462 U.S. at 236).  A determination of probable cause is "one on which 'reasonable and prudent people would rely.'" *United States v. Jones*, 952 F.3d 153, 158 (4th Cir. 2020) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)).   Probable cause plainly "exist[s] where the known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found."  *Ornelas v. United States*, 517 U.S. 690, 696 (1996).  The probable cause standard gives law enforcement officers "leeway to draw reasonable conclusions." *Taylor v. Farmer*, 13 F.3d 117, 121-22 (4th Cir. 1993).

The federal warrant referenced geolocation data positioning the Defendant's phone and ████'s phone together on the day of ████'s death.  Def. Ex. B at ¶ 21.  The geolocation data was derived, in part, from the Charles County search and seizure warrant for the Defendant's cellphone location data.  As the Government has established, the Charles County affidavit was constitutionally valid as it contained no false or misleading statements and had substantial probable cause for the seizure and search of the Defendant's cellphone records.  *See supra* 8-11.  The Defendant's argument that the federal warrant is constitutionally invalid because it relied on information from the Charles County warrant should be easily dismissed.

Finally, the Defendant's attempt to suppress the federal warrant based on staleness fails.

"In assessing the staleness of the information, the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. . . Rather, we consider whether the objects to be seized would still be present due to the ongoing nature of the activity or whether the items sought to be seized are not ordinarily destroyed or moved about from one place to another."  *United States v. Dowdell*,

546 F. App'x 128, 133–34 (4th Cir. 2013).  Further, "[c]ourts routinely reject staleness arguments in the face of ongoing and continuous criminal activities." *Id.*

In *Dowdell*, the last drug-related activity in the defendant's home occurred in November 2010 and the search warrant to search his home was executed in March 2011—four months later. *Id.* at 130-31.  In affirming the district court's denial of defendant's motion to suppress, the Court reasoned that "the length of the criminal conspiracy in this matter and the ongoing nature of the criminal activities weigh heavily against Dowdell's staleness argument." *Id.* at 134.  Further, evidence of drug distribution, "such as papers, records, and receipts" were items the defendants likely stored in his home and they likely remained there as business records "are not ordinarily destroyed or moved about." *Id.; see also United States v. Farmer*, 370 F.3d 435, 439 (4th Cir. 2004) (nine month old information supported probable cause to search defendant's home for evidence of counterfeit goods trafficking).

Here, the last controlled purchase from the Defendant at his home occurred in September 2022 and the residential search warrant was executed in December 2022—three months later.  The affidavit detailed how law enforcement continued to surveille the Defendant's home after the last controlled buy and, as in *Dowell*, observed continuous and ongoing drug distribution.  The information provided was not too old to provide sufficient probable cause for the magistrate judge to believe evidence of drug distribution would be found in the Defendant's home in December 2022.

**CONCLUSION**

As discussed herein, the Court should deny the Defendant's motion suppress tangible and derivative evidence and for a *Franks* hearing, ECF No. 59.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:    _____
Brooke Y. Oki
Darren S. Gardner
Assistant United States Attorneys

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 1, 2024, I caused the foregoing to be electronically filed

through this Court's CM/ECF system, which will send notification of such filing to all parties.

<u>/s/ Darren Gardner</u>
Brooke Y. Oki
Darren S. Gardner
Assistant United States Attorneys
