**In the United States District Court**
**For the District of Maryland**

United States of America                    *

          v.                              *          No.  DKC-22-429

OJ Rashad Green                             *

        *    *    *    *    *    *    *    *    *    *

**Omnibus Motion in Limine to Exclude Evidence Pursuant to Federal Rules of Evidence**

# Table of Contents

I.    Introduction.................................................................................................................... 1

II.   Applicable Rules and Legal Standard ........................................................................ 3

  A.  Federal Rules of Evidence 401 and 402. ................................................................. 3

  B.  "Other acts" evidence .............................................................................................. 3

    1.  Rule 404(b) ........................................................................................................ 3

    2.  The category of "intrinsic" evidence is construed narrowly, so as to avoid rendering Rule 404(b) "virtually toothless."................................................................................. 5

  C.  Federal Rule of Evidence 403.................................................................................. 7

  D.  Need for personal knowledge under Rule 602 ........................................................ 8

  E.  Expert Witness Testimony ....................................................................................... 8

  F.  Hearsay .................................................................................................................... 9

III.  Argument .................................................................................................................... 9

  A.  2007 conviction for possession of a controlled substance ...................................... 9

  B.  Evidence of uncharged drug distributions ............................................................ 11

    1.  Evidence of uncharged drug sales based on Mr. Green's statements or "witnesses who spent time at the house." .................................................................................... 14

    2.  Jail calls from June of 2022 ............................................................................ 15

    3.  Mr. Green's statements regarding prior drug distribution activity ...................... 16

    4.  Witnesses' accounts of prior uncharged drug transactions.................................. 17

    5.  Prior drug distribution with OJ Brown, a.ka. "Pops" at an undisclosed time and place ......................................................................................................................... 17

  C.  Any reference to uncharged suspected overdoses, including of L.W. ..................... 18

  D.  Photographs from search warrant execution of house showing evidence of uncharged crimes (or related testimony) ........................................................................................ 19

  E.  Witness testimony regarding acts of violence or intimidation ................................. 21

  F.  Reference to -4203 telephone number as "defendant's number" ............................ 22

  G.  Law enforcement testimony that drug dealers use multiple phones........................ 25

  H.  Evidence that OJ Brown (Pops) is the father of OJ Green ...................................... 26

  I.   Cell site location information dating long before the first alleged distribution.......... 27

IV.   Conclusion ................................................................................................................ 27

OJ Rashad Green, by and through undersigned counsel, respectfully moves this Court in limine under Federal Rules of Evidence 401, 402, 403, 404(b), 701, and 702, for an order precluding the introduction at trial of the following items or categories of evidence:

- Mr. Green's 2007 conviction for possession of a controlled substance

- Evidence of uncharged drug distributions

- Any reference to uncharged suspected overdoses, including of L.W.

- Photographs from the search warrant execution at the Manning Road house showing evidence of uncharged crimes (or related testimony)

- Witness testimony regarding alleged acts of violence or intimidation by Mr. Green

- Reference to the -4203 telephone number as "defendant's number," or similar formulations

- Law enforcement testimony that drug dealers use multiple phones

- Evidence that OJ Brown (Pops) is the father of OJ Green

- Cell site location information dating long before the first alleged distribution

## I.    Introduction

The Superseding Indictment charges Mr. Green with five counts of distribution of fentanyl, one of them resulting in death. The five charged distributions are alleged to have occurred on January 21, February 7, March 3, May 17, and September 28, 2022. ECF 51. Mr. Green is not charged with possession with intent to distribute, or a drug trafficking conspiracy. Trial is scheduled to begin on February 12, 2025.

Though the charges in this case are relatively straightforward, the government has indicated its intent to introduce a broad range of evidence, primarily other acts evidence, that is not intrinsic, relevant, or necessary to the elements of the offenses charged. This

evidence will create a substantial risk of unfair prejudice to Mr. Green, and needlessly prolong the trial.

On January 14, 2025, the government provided a disclosure under Federal Rule of Evidence 404(b), attached here as Exhibit 1. This first notice identified **three** categories of evidence the government intends to present, generally stemming from Mr. Green's post-arrest statements and pertaining to alleged uncharged drug trafficking. The government wrote that the evidence "is intrinsic to the crimes charged in this case and therefore notice is not required" but that they were "providing notice out of an abundance of caution." Exhibit 1 at 2. Yesterday, on January 23, 2025, the government provided a supplemental Rule 404(b) notice, included here as Exhibit 2, that identified **six** categories of "other acts" evidence that it intends to introduce at trial. The categories include Mr. Green's prior 2007 conviction for possession of a controlled substance, and other evidence pertaining to uncharged drug-related conduct. Aside from the 2007 conviction, which the government concedes is extrinsic, the government's position is that all of the noticed evidence is intrinsic to the crimes charged.

On January 22, 2025, government and defense counsel conferred regarding the Rule 404(b) notice and other categories of evidence to determine whether any of the motions in limine the defense contemplated filing were moot or could be resolved via agreement. This motion addresses evidence which defense counsel has identified as remaining ripe for motions in limine.

II.    **Applicable Rules and Legal Standard**

    A. **Federal Rules of Evidence 401 and 402.**

"It is elementary that, for evidence to be admissible, it must be relevant to an issue being tried." *United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005) (citing Fed. R. Evid. 402). Under Federal Rule of Evidence 401, evidence is relevant only if "it has a tendency to make a fact more or less probable than it would be without the evidence . . . [and] the fact is of consequence in determining the action." Determining relevancy calls for an examination of the "relation between an item of evidence and a matter properly provable in the case." Fed. R. Evid. 401 adv. comm. note. "Relevancy must thus be determined in relation to the charges and claims being tried . . . ." *Hedgepeth*, 418 F.3d at 419.

Additionally, when the relevance of evidence depends on the existence of a fact, proof must be introduced sufficient to support a finding that the fact does exist. Fed. R. Evid. 104(b).

    B. **"Other acts" evidence**

        1. **Rule 404(b)**

Not all relevant evidence is admissible. Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Such prior bad act evidence is not excluded because it is completely irrelevant to the charges being tried. "Instead, the general inadmissibility of such evidence is based on the danger that this type of evidence will overly influence the finders of fact and thereby persuade them to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *United States v. Hall*,

858 F.3d 254, 265–66 (4th Cir. 2017) (internal citations and quotation marks omitted). A "risk inheres in all propensity evidence" that the government will use other bad acts "as a character smear that might actually infect the entirety of the trial—by portraying the defendant in the eyes of the jury as a person deserving of particular condemnation almost irrespective of the various forms of misconduct of which he stood accused." *United States v. Briley*, 770 F.3d 267, 277 (4th Cir. 2014). As the Fourth Circuit has put it, "[t]he trouble with such character wounds is that they bleed, in the sense that 'bad people' may be presumed by the factfinder to commit no end of criminal acts." *Id.*

In *United States v. Queen*, the Fourth Circuit set forth a four-step test for determining when prior-acts evidence is admissible under Rule 404(b). 132 F.3d 991, 997 (4th Cir. 1997). **First**, "[t]he evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant." *Id.* **Second**, "[t]he act must be necessary in the sense that it is probative of an essential claim or an element of the offense." *Id.* **Third**, "[t]he evidence must be reliable." *Id.* And **fourth**, "the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." *Id.*

It is the government's burden to establish that evidence of a defendant's prior bad acts is admissible for a proper purpose and to "explain how that evidence 'fits into a chain of inferences—a chain that connects the evidence to [each] proper purpose, no link of which is a forbidden propensity inference.'" *Hall*, 858 F.3d at 266 (citation omitted).[1]

---

[1] Additionally, Rule 404(b) imposes a written notice requirement upon the government. Fed. R. Evid. 404(b)(3).

### 2. The category of "intrinsic" evidence is construed narrowly, so as to avoid rendering Rule 404(b) "virtually toothless."

Alternatively, "the evidence may be introduced if it concerns acts intrinsic to the alleged crime because evidence of such acts does not fall under Rule 404(b)'s limitations to begin with." *United States v. Otuya*, 720 F.3d 183, 188 (4th Cir. 2013). Other-acts evidence is intrinsic "when it arose out of the same . . . series of transactions as the charged offense, . . . or is necessary to complete the story of the crime on trial." *United States v. Brizuela*, 962 F.3d 784, 793-94 (4th Cir. 2020) (ellipses in original). Other-acts evidence and the charged offense arise out of the same series of transactions if "both acts are part of a single criminal episode." *Otuya*, 720 F.3d at 188.

In addition, bad acts are intrinsic "when they are inextricably intertwined with the offense." *Howard v. City of Durham*, 68 F.4th 934, 955 (4th Cir. 2023). Other-acts evidence is inextricably intertwined "if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Bush*, 944 F.3d at 196.

Courts should construe these categories with care. As the Fourth Circuit has cautioned, "it cannot be that all evidence tending to prove the crime is part of the crime. If that were so, Rule 404(b) would be a nullity." *United States v. Fuertes*, 805 F.3d 485, 494 n.4 (4th Cir. 2015). Because "the distinction between intrinsic and extrinsic evidence is unclear and confusing, and can lead to substituting conclusions for analysis," courts must guard against "the harm caused by granting federal prosecutors . . . unmitigated leeway" to label evidence "intrinsic." *Id.*

In particular, the inextricably-intertwined test "is vague, overbroad, and prone to abuse." *Id.* (quoting *United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010)). The Fourth

Circuit therefore limits this category of intrinsic evidence to what is "*necessary* to provide context relevant to the criminal charges." *United States v. Ebert*, 61 F.4th 394, 403 (4th Cir. 2023) (emphasis added). A virtually unlimited range of evidence might provide some degree of "context" to the charged crimes. But not all of that evidence can be deemed intrinsic. Instead, evidence qualifies as inextricably intertwined only if it provides context that is "necessary" to understanding the crimes on trial. *United States v. Basham*, 561 F.3d 302, 326 (4th Cir. 2009).

Similarly, to fall within the "complet[ing] the story" category, evidence "must be probative of an integral component of the crime on trial or provide information without which the factfinder would have an incomplete or inaccurate view of other evidence or of the story of the crime itself." *Brizuela*, 962 F.3d at 795. "And importantly," the evidence "must be 'necessary' to 'complete the story' of the charged offense," which "requires a hard look to ensure that there is a clear link or nexus between the evidence and the story of the charged offense, and that the purpose for which the evidence is offered is actually essential." *Id.* (citation omitted). Absent such a "clear link," Rule 404(b) would be "virtually toothless," and "the 'complete the story' doctrine might be used to disguise the type of propensity evidence that Rule 404(b) is meant to exclude." *Id.* at 795, 797. Other acts do not "complete the story" unless they are "necessary to prove a specific element of a charged offense or provide information that was essential to understanding how the offense was committed." *Id.* at 796; *see Howard*, 68 F.4th at 956 (holding evidence was intrinsic because it was "impossible to tell the story of the [case] without introducing that evidence"); *United States v. Palacios*, 677 F.3d 234, 245 (4th Cir.

2012) (explaining evidence is necessary to complete the story of the crime on trial where it provides "express proof of the conduct for which [defendant] was indicted").

Finally, intrinsic evidence is inadmissible unless it clears three additional hurdles. First, intrinsic evidence must be relevant, i.e., it must have some "tendency" to make a fact "of consequence" "more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see, e.g.*, *United States v. Bajoghli*, 785 F.3d 957, 965 (4th Cir. 2015) (holding evidence admissible because it was "probative to prove knowledge and intent, which are elements of the crimes charged in the indictment"); *United States v. Siegel*, 536 F.3d 306, 317 (4th Cir. 2008) (deeming evidence likely inadmissible because it did not appear "relevant" to "crimes with which [defendant] was charged"); *United States v. Lipford*, 203 F.3d 259, 269 (4th Cir. 2000) (affirming admission of intrinsic evidence because it was "highly relevant to the drug trafficking conspiracy charge"); *United States v. Cooper*, 482 F.3d 658, 663 (4th Cir. 2007) (concluding evidence was inextricably intertwined with charged offenses because it was "relevant to [defendant's] mens rea").

Second, "[e]ven intrinsic evidence . . . must also satisfy Rule 403's balancing test." *Basham*, 561 F.3d at 329. And third, intrinsic evidence cannot be "admitted solely to demonstrate bad character." *United States v. Stitt*, 250 F.3d 878, 888 (4th Cir. 2001).

### C. Federal Rule of Evidence 403

Even when evidence is determined to be relevant under Rule 402 and not inadmissible under Rule 404(b), it still must satisfy the strictures of Federal Rule of Evidence 403 before it may be admitted at trial. Rule 403 provides that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

needlessly presenting cumulative evidence." "The rule calls for weighing the need for admission against the potential harms." *United States v. Ham*, 998 F.2d 1247, 1252 (4th Cir. 1993). "When the harmful component of relevant evidence becomes unduly prejudicial, a court should exclude it from consideration by the jury." *Id.* Undue or unfair prejudice does not solely refer to emotional or inflammatory evidence; rather, it "means an undue tendency to suggest decision on an improper basis." Fed. R. Evid. 403 advisory committee's note.

### D. Need for personal knowledge under Rule 602

Federal Rule of Evidence 602 provides that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

### E. Expert Witness Testimony

Federal Rule of Evidence 701 permits lay opinion testimony that is,

> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Rule 702 governs expert witness testimony, and permits opinion testimony if the proponent can demonstrate,

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the
principles and methods to the facts of the case.

Fed. R. Evid. 702.

The line between lay opinion testimony and expert opinion testimony "is a fine one." *United States v. Perkins*, 470 F.3d 150, 155 (4th Cir. 2006) (internal quotations and citation omitted). An "expert witness must possess some specialized knowledge or skill or education that is not in possession of the jurors," and "lay opinion testimony *must* be based on personal knowledge." *Id.* at 155-56 (internal quotation and citation omitted; emphasis in original). Rule 701 "forbids the admission of expert testimony dressed in lay witness clothing, but it does not interdict all inference drawing by lay witnesses." *Id.* at 156.

## F. Hearsay

Absent an exception, hearsay, as defined by Rule 801, is inadmissible under Rule 802.

## III. Argument

Mr. Green moves to preclude introduction at trial of any evidence regarding the below categories.

### A. 2007 conviction for possession of a controlled substance

The government's supplemental notice indicates their intention to introduce a more than 15-year-old drug possession conviction to show any and all of the Rule's possible non-propensity purposes:

> The Defendant's 2007 conviction for possession of a controlled dangerous substance (Circuit Court for Prince George's County CT071822A). Such evidence will be admitted to show intent, preparation, plan, knowledge, identity, absence of mistake and/or lack of accident.[2]

This conviction should be excluded under Rules 402, 404(b), and 403. The evidence does not pass *Queen*'s four-factor test for admissibility under Rule 404(b). It is not relevant to a fact of consequence, it is not necessary to an element of the offense, and what little probative value it may have, if any, is substantially outweighed by the danger of unfair prejudice.

In *United States v. Hall*, the Fourth Circuit considered the trial court's admission, in a trial for possession with intent to distribute marijuana and firearms offenses, of the defendant's prior simple possession of marijuana conviction. 858 F.3d 254 (4th Cir. 2017). The Court found that the prior *possession* conviction was not relevant to the *intent to distribute*, noting "Possession and distribution are distinct acts—far more people use drugs than sell them—and these acts have different purposes and risks." *Id.* at 267 (quoting *United States v. Davis*, 726 F.3d 434, 444 (3d Cir. 2013)). The Court found that the admission of the prior possession conviction was highly prejudicial. *Id.* at 270.

The prior possession conviction's lack of relevance to the charges is even more plain here, where Mr. Green is charged only with distribution, which does not have an element of intent.[3] *See United States v. Miller*, 673 F.3d 688, 696–97 (7th Cir. 2012) ("When, as was true here, intent is not meaningfully disputed by the defense, and the bad acts evidence is

---

[2] Exhibit 2.
[3] The elements of distribution are: "First, that the defendant distributed narcotics; and, Second, that the defendant distributed the narcotics knowingly." Sand, Siffert, *Modern Fed. Jury Instructions*, Instruction No. 56.01.

relevant to intent only because it implies a pattern or propensity to so intend, the trial court abuses its discretion by admitting it."); *US v. Colon*, 880 F.2d 650, 659 (2d Cir. 1989) (where intent not at issue, evidence of prior drug sales would not be admissible).

Nor does the prior conviction conceivably serve any of the other proffered purposes, including preparation, plan, knowledge, identity, absence of mistake, and/or lack of accident. As of the filing of this motion, the defense does not even know what substance Mr. Green was convicted of possessing in 2007. The only relevance the conviction could have "is that it tends to suggest that [Mr. Green] is, in general, more likely to distribute drugs because he was involved with drugs in the past." *Hall*, 858 F.3d at 267. This propensity inference is expressly prohibited by Rule 404(b).

The Court should exclude evidence of and reference to this conviction.

### B.  Evidence of uncharged drug distributions

The Court should preclude evidence of uncharged drug distributions under Rules 402, 404(b), and 403. The government has not complied with Rule 404(b)'s notice requirement by articulating the reasoning that supports the permitted purpose for which it intends to offer the evidence. Instead, like throwing spaghetti at the wall to see what sticks, the government lists essentially every non-propensity purpose in Rule 404(b) for every category of evidence.

Nor can the government satisfy *Queen*'s four-factor test for admission of the evidence under Rule 404(b), as the evidence is not relevant, necessary, or reliable. In essence, each category of uncharged distribution comes down to propensity evidence, and it should be excluded. Finally, what little probative value the evidence may have would be substantially outweighed by the danger of confusion or unfair prejudice.

Courts have cautioned that in drug cases, "[c]loser attention needs to be paid to the reasons for using prior drug convictions—to lessen the danger that defendants [] will be convicted because the prosecution invited, and the jury likely made, an improper assumption about propensity to commit drug crimes." *Miller*, 673 F.3d at 696. *See also United States v. Johnson*, 617 F.3d 286, 297 (4th Cir. 2010) (reversing drug conspiracy conviction due in part to admission of improper 404(b) evidence of defendant's prior drug activity unrelated in time, place, or pattern of conduct); *United States v. Hernandez,* 975 F.2d 1035 (4th Cir. 1992) (reversing cocaine conspiracy conviction due to admission of evidence of prior drug activity that depicted defendant "as an experienced crack dealer"). This concern is equally, if not more, applicable to uncharged drug-related conduct, as it is less reliable than a conviction. Mr. Green was not charged with, let alone convicted of, any of the prior drug-acts the government intends to elicit at trial.

In *United States v. Schwartz*, a cocaine distribution trial, a witness testified in the government's case in chief "that the defendant supplied him with cocaine not only on the occasion charged in the Indictment, but also on numerous other occasions, beginning when [the witness] was a 16-year-old high school student." 790 F.2d 1059, 1060 (3rd Cir. 1986). The Court of Appeals found that even assuming the "other crimes" evidence was relevant to a non-propensity purpose, "its relevance was marginal at best, and the prejudice to the defendant was very great." *Id.* at 1062. The prejudice stemmed "not only from the implication that, since [the defendant] had committed other crimes, he must be guilty of the crime on trial, but also from the fact that the generalized nature of the testimony precluded any meaningful refutation except a similarly generalized denial." *Id.* The court held that the evidence should have been excluded, and remanded for a new trial. *Id.*

12

Here, as in *Schwartz*, any relevance is marginal at best, while the risk of unfair prejudice is great. Also like in *Schwartz*, the details of the prior allegations are largely unknown to the defense, thwarting the ability to effectively refute them. The government's strategy appears to be piling up multiple unrelated, generalized allegations of past drug dealing to leave the jury with the impression that, because Mr. Green is a drug dealer, he probably committed the acts of drug dealing charged in this case.

Additionally, and as mentioned above in section III.A. where, as here, intent is not at issue, the prior acts cannot conceivably serve that purpose. Yet the government identifies intent as one of the permitted purposes for each category of evidence below.[4]

Nor can it be seriously argued that this evidence is intrinsic to the crimes charged. It is not inextricably intertwined with the charged offenses, from which most if not all of the allegations differ in both time and place.[5] Mr. Green is charged with five counts of distribution of fentanyl, occurring on five specific dates, all while he resided at the Manning Road address. The prior alleged distributions do not arise "out of the same . . . series of transactions as the charged offense" nor are they "necessary to complete the story of the crime on trial." *Brizuela*, 962 F.3d at 793-94.

For these reasons, each of the below outlined categories of prior drug-act evidence should be excluded from trial.

---

[4] Save the last, for which no permitted purpose is identified.
[5] There may very well be other significant differences too. The defense is unable to raise these as the details of this evidence remain unclear.

**1. Evidence of uncharged drug sales based on Mr. Green's statements or "witnesses who spent time at the house."**

The government intends to present evidence that the Defendant took control over the house at 16310 Manning Road, Accokeek, MD and orchestrated drug distribution from the house. This evidence will include the Defendant's own recorded interview statements, the four controlled purchases at the house, testimony from other witnesses who spent time at the house (including CS2, C█████████ P█████, and A████ H██), home ownership documents, and home surveillance footage from law enforcement. Such evidence will be admitted to show intent, preparation, plan, knowledge, identity, absence of mistake and/or lack of accident.[6]

Counts Two through Five of the Superseding indictment are based on recorded controlled drug buys from Mr. Green by CS2 at the Manning Road address on specifically charged dates. The defense does not dispute that evidence pertaining to "the four controlled purchases at the house" is relevant and intrinsic to the crimes charged. Nor does the defense dispute the relevance of the "home surveillance footage from law enforcement," which the defense understands to be from the dates of the charged distributions.

Rather, the defense objects to evidence of other uncharged drug sales, whether it be presented through Mr. Green's statements, or other "witnesses who spent time at the house." As mentioned above, because intent is not an element of the charged offenses, it is hard to imagine how this proffered evidence is relevant or necessary. The government has not articulated how this evidence is pertinent to "preparation, plan, knowledge, absence of mistake and/or lack of accident." The government cannot satisfy *Queen*'s test for admissibility under Rule 404(b), and the evidence will result in unfair prejudice in violation of Rule 403.

---

[6] Exhibit 2.

### 2. Jail calls from June of 2022

The government's supplemental notice indicates its intent to present:

> The Defendant's statements that he made during recorded jail calls directing others to conceal drugs from law enforcement, expressing his frustration over drugs that another had misplaced, and indicating how he left another in charge of his drug distribution operation. Such jail calls will be admitted to show intent, preparation, plan, knowledge, identity, absence of mistake and/or lack of accident.[7]

As of today, the deadline for motions in limine and just over two weeks before trial, the defense has not received or listened to these jail calls. Based on a Report of Investigation authored by then-Task Force Officer Cheyann Harris in September of 2022 (and received by the defense in discovery on January 7, 2025), the defense understands that the referenced jail calls occurred in June of 2022 while Mr. Green was detained in Prince George's County Detention Center on an unrelated matter. What the phone calls would tend to show, from the government's perspective, is that while Mr. Green was detained, he continued to exercise dominion and control over a drug business run out of his house. The only relevance this evidence has to the charged offenses is its tendency to show Mr. Green's propensity to engage in drug-related conduct. None of the charged distributions were alleged to have occurred in June of 2022 or through the individuals that he called from jail. The phone number that Mr. Green is alleged to have called from jail is not the phone number (ending in -4203) whose ownership will be contested at trial.

As just one example of the danger of unfair prejudice, all recorded calls begin with a loud admonition that the call is from "[a]n inmate at a Maryland Correctional Facility."[8] It

---

[7] Exhibit 2.

[8] Even if redacted, the calls leave the unmistakable inference of jail phone calls (and therefore Mr. Green's custody) considering their quality, the fact that Mr. Green is the one making the calls, the context of the calls (checking on the status of things at home,

is beyond debate that jurors should have no knowledge of a defendant's pre-trial incarceration. *See United States v. Bennett*, 984 F.2d 597, 607-08 (4th Cir. 1993) (finding a prosecutor's question referencing a defendant's pre-trial custody to be "clearly improper"); *United States v. Harris*, 703 F.2d 508, 510 (11th Cir. 1983) (nothing that knowledge of pretrial detention "robs an accused of the respect and dignity accorded other participants in a trial and constitutionally due the accused as an element of the presumption of innocence, and surely tends to brand him in the eyes of the jurors with an unmistakable mark of guilt"). Indeed, this is why detained defendants are allowed to wear non-jail clothes to Court in the presence of the jury. Here, if admitted, the jurors will repeatedly hear of Mr. Green's incarceration, which was for an unrelated matter, and infer that he was jailed for this or another offense because he is a danger to the community or a flight risk. All of these inferences are improper and avoidable.

The Court should preclude these calls under Rules 402, 404(b), and 403.

### 3. Mr. Green's statements regarding prior drug distribution activity

The government's notice indicates its intent to introduce:

> The Defendant's statements made during a recorded interview after his arrest admitting his previous drug distribution activity. Such evidence will be admitted to show intent, preparation, plan, knowledge, identity, absence of mistake and/or lack of accident.[9]

The referenced alleged previous drug distribution activity is patently irrelevant to any purpose other than propensity. The statements do not make clear what substances were

---

referencing how long he'll be locked up) and that there would be no other reason for the Government to have possession of or been listening to the calls.
[9] Exhibit 2.

allegedly distributed when or where. The Court should preclude these statements under Rule 402, 404(b), and 403.

### 4. Witnesses' accounts of prior uncharged drug transactions

The government's supplemental Rule 404(b) notice indicates:

> The government intends to present testimony from C████ P███, A████ H██, and CS2 regarding their history of interactions with the Defendant, including specific drug transactions they engaged in with the Defendant. Such evidence will be admitted to show intent, preparation, plan, knowledge, identity, absence of mistake and/or lack of accident. [10]

Again, the defense does not know what the alleged timeframes or locations of these prior uncharged drug sales are. But as far as the defense is aware, they are not directly pertinent to the five charged distributions. As a result, they are not relevant, they do not pass the test for admissibility under Rule 404(b), and their admission raises a substantial risk of unfair prejudice.

### 5. Prior drug distribution with OJ Brown, a.ka. "Pops" at an undisclosed time and place

The government's notice indicates:

> The government intends to present testimony from CS2 that the Defendant and OJ Brown, a.k.a "Pops", worked together to distribute drugs from a home prior to the Defendant's residence at 16310 Manning Road, Accokeek, MD. [11]

The government has not articulated the permitted purpose for which it intends to offer the evidence, or the reason that supports that purpose, as required by Rule 404(b). For this reason alone, this evidence is not admissible under Rule 404(b). In addition to the notice

---

[10] Exhibit 2.
[11] Exhibit 2.

defect, though, the evidence is relevant only to propensity and creates a substantial risk of unfair prejudice. The government has not provided, in discovery or otherwise, any information regarding the time, place, duration, or nature of this alleged prior drug distribution with "Pops." What little probative value the evidence may have would be substantially outweighed by the danger of confusion or unfair prejudice.[12]

### C. Any reference to uncharged suspected overdoses, including of L.W.

Law enforcement investigated Mr. Green in connection with the suspected drug overdose of L.W. on February 13, 2022. Mr. Green was not charged in connection with that investigation. The government has not provided written notice of its intent to present evidence in connection with the suspected overdose or the investigation of Mr. Green. However, the government indicated on a phone call that it intends to elicit testimony regarding the overdose investigation into Mr. Green in some capacity.

The Court should exclude any evidence or testimony regarding the suspected overdose <u>and</u> regarding the investigation into Mr. Green in connection with the suspect overdose.

First, this evidence is not relevant to a fact of consequence in the trial and should be excluded under Rule 402.

Second, the evidence amounts to a prior bad act under Rule 404 for which no written notice was provided, no proper non-propensity purpose can be offered, and the government cannot satisfy the *Queen* test for admissibility.

---

[12] As discussed below, the Court should also exclude evidence that OJ Brown is the father of OJ Green.

Third, any reference to the investigation or the mere fact of the overdose creates a substantial risk of unfair prejudice, confusing the issues, and misleading the jury. The evidence of Mr. Green's involvement in the distribution is lacking. This is evidenced by the government decision not to charge him with it. Count One pertains to a different alleged fatal drug overdose; presenting evidence that another one occurred in close temporal and geographic proximity would be extremely problematic.

### D. Photographs from search warrant execution of house showing evidence of uncharged crimes (or related testimony)

The government has indicated during a meet and confer conference and in subsequent correspondence that it intends to introduce photographs of the exterior and interior of 16310 Manning Road taken during the execution of search and arrest warrants on January 4, 2023.  Certain of these photographs depict firearms, ammunition, and a vehicle which is alleged to have been reported stolen. This evidence should be excluded under Federal Rules of Evidence 402, 404(b) and 403, as should testimony regarding these recordings and photographs and their contents.

The evidence is not relevant to a fact of consequence in the trial.  At the time of the search warrant, the original indictment against Mr. Green had already been returned, charging him with two counts of distribution (occurring on January 21, 2022, and September 28, 2022); the government already possessed the evidence that would form the basis of the additional counts. Mr. Green is not charged with any offense related to the use or possession of these items, and the government has not proffered any evidence suggesting that these items were used in the commission of any charged offense.  As such, this evidence should be excluded as irrelevant under F.R.E. 402.

The evidence is substantially more prejudicial than probative and should be excluded under F.R.E. 403. A juror who concludes that Mr. Green is an "armed drug dealer" may decide that he is a dangerous individual who needs to be incarcerated regardless of his guilt for the charged offenses; yet evidence that firearms and ammunition were present in the Manning Road house is not probative of any fact relevant to an offense for which Mr. Green is being tried, since there is no allegation that these items were used in any of the five alleged distributions.

For these reasons, and the ones which follow, the evidence also fails the *Queen* test for admissibility under Rule 404(b). Although Mr. Green is not charged with any offense related to the firearms, ammunition, and alleged stolen vehicle, a reasonable juror could interpret testimony or depictions of these items as evidence that Mr. Green committed a crime or wrongful act by possessing them.

Similar to the discussion above, this is not a possession with *intent* to distribute case in which circumstantial evidence of a person's intent in possessing drugs and paraphernalia might be admissible under F.R.E. 404(b)(2). Mr. Green is charged with *distribution* based on video recorded alleged controlled purchases and, in the case of the resulting-in-death count, expected (false) testimony that Mr. Green arranged to meet an individual in a public location to sell him drugs. The only possible probative value of the evidence is to show that Mr. Green is a person who commits crimes, and is therefore more likely to have committed the charged offenses—precisely the character propensity inference that Rule 404(b) forbids.

The presence of these items in the Manning Road house is also not intrinsic to the charged offenses. The alleged controlled purchases involved individuals coming to the house, purchasing drugs, and leaving without any interaction with the firearms,

ammunition, or vehicle. The distribution resulting in death count is alleged to have occurred at another location entirely, and nearly a year earlier (February 7, 2022). Accordingly, the presence of these items neither arose "out of the same . . . series of transactions as the charged offense," nor is evidence of their presence "necessary to complete the story of the crime on trial." *Brizuela*, 962 F.3d at 793-94.

### E. Witness testimony regarding acts of violence or intimidation

Discovery indicates that two witnesses have told police that they witnessed Mr. Green engage in acts of violence or intimidation. During a defense investigator's interview with one such witness, the witness disavowed claims made in an earlier police interview that he had personally witnessed Mr. Green committing violent acts, but instead stated that he had heard about these acts from a third party.

The government has not provided written notice of its intent to present such evidence of uncharged offenses by Mr. Green. However, it indicated in a telephone call that it intends to elicit testimony to this effect.

As an initial matter, any testimony about third parties' allegations of violent acts would be out-of-court statements offered for their truth, and therefore plainly hearsay excludable under Rule 802

Testimony about Mr. Green committing violent acts does not pertain to any fact that is relevant to the case. Mr. Green is not charged with any crime of violence, and the government has provided no evidence to suggest that these alleged acts of violence played any role in the drug distributions charged in this case. Therefore, this testimony should be excluded as irrelevant under Federal Rule of Evidence 402.

The testimony should also be excluded under F.R.E. 403 because the prejudicial impact of the evidence far outweighs any probative value. Once again, a juror who views Mr. Green as a "violent drug dealer" might conclude that he is a dangerous person who should be incarcerated regardless of whether he is guilty of the charged offenses. But none of these alleged acts of violence or intimidation makes any fact relevant to the charged offenses more or less probable.

The evidence also fails under Rule 404(b), both because no written notice has been provided and because it does not fall within any valid 404(b) purpose: even if the jury credited testimony that Mr. Green committed violent acts, this would say nothing about his motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident in carrying out the alleged drug distributions.  Mr. Green is not charged in a drug conspiracy; his behavior towards others has no relevance to the question of whether he in fact distributed the drugs which he is charged with distributing.  The only conceivable purpose for introducing this evidence is to suggest that Mr. Green has a criminal disposition, making it more likely he committed the charged offenses—a character-based inference explicitly prohibited by Rule 404(b).

### F.  Reference to -4203 telephone number as "defendant's number"

Count One of the Superseding Indictment charges Mr. Green with distribution of a controlled substance resulting in death, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). ECF No. 51.  The government's theory is that the victim obtained the drugs which caused the fatal overdose from witness C.P.  When interviewed by police, C.P. claimed that he had obtained the drugs from "Ice," whom the government alleges is Mr. Green, and that he had "Ice's" number saved in his phone contacts as "D" or "Dee."  Law enforcement took three

photographs of C.P.'s phone contacts of numbers e with the name "D" or "Dee" as the associated contact name; one of these was a number ending in -4203. Law enforcement has focused on this number in its investigation, and at trial is expected to present evidence related to the use of this number for calls and texts and the geolocation of the phone assigned to it.

The defense theory is that C.P. was lying about the source of the drugs, and therefore lying about the identity of the user of the -4203 number. Because C.P. will have every incentive to testify consistently with his prior statements to police and grand jury testimony, it is expected that he will continue to claim that the -4203 number belonged to "Ice" and that "Ice" was the source of the drugs he purchased on the day of the fatal overdose, regardless of whether that is the truth. As the only witness expected to identify Mr. Green as the source of the drugs which allegedly led to the fatal overdose, C.P.'s credibility is therefore of central importance to the case.

As explained in Mr. Green's filings related to a Motion to Dismiss Count One and a Motion to Suppress Evidence and for a Franks Hearing, C.P.'s identification of Mr. Green as his source of supply is contradicted by other evidence. Mr. Green has presented evidence indicating that the -4203 number did not belong to him and will present additional such evidence at trial.

Ownership of the -4203 number is also of central importance because the government has notified the defense that it will seek to qualify Detective Ryan Johnson as an expert in cell site data and historical location analysis, and that his testimony will include the location of "the defendant's x4203 number" on the date of the fatal overdose. But the relevance of the -4203 number's location is conditioned entirely on the allegation that this

was Mr. Green's number.  Absent proof of that alleged fact, testimony of the -4203

number's location will be irrelevant under F.R.E.104(b), *Relevance That Depends on a Fact*,

and therefore inadmissible under F.R.E. 402.

The defense here seeks to preclude any description of the -4203 number as "the

defendant's number," "Mr. Green's number," "Ice's number," or any other formulation

that assumes the truth of the contested allegation that the -4203 number or the phone to

which it was assigned belonged to Mr. Green.[13]  In particular, the defense requests that the

court instruct government counsel not to refer to the -4203 number and phone in this

manner in argument or questioning, not to elicit any testimony from law enforcement or

expert witnesses referring to the number this way, and not to present any exhibits that label

the number in this way.

Unless a witness testifies from personal observations of Mr. Green using the -4203

number, referring to it as the "defendant's number" contravenes the F.R.E. 602 requirement

that a witness testify from "personal knowledge of the matter."  Similarly, testimony which

merely relays the written or oral statement of another that the -4203 number is "defendant's

number" is hearsay forbidden under F.R.E. 802, because this description is relevant only if

offered for the truth of the matter asserted—that the number belonged to Mr. Green.

The government has not provided the defense with notice that Det. Johnson or any

expert is qualified to opine, or expected to opine, as to the *ownership* of a given telephone

number by a particular person.  As such, testimony by any law enforcement or expert

witness as to their *opinion* that the -4203 number belonged to Mr. Green is prohibited by

---

[13] In this section, the term "defendant's number" is used to refer to any of these
formulations.

F.R.E. 701, as it does not fall into any of the exceptions to the general prohibition against lay opinion testimony.

Use of the term "defendant's number" for -4203 also violates F.R.E. 403. Whatever probative value might stem from referring to the number by this unproven moniker—and there is none—is substantially outweighed by the prejudice to Mr. Green if the jury were to hear a central, unproven allegation of the government's case referred to as though it were fact.

### G. Law enforcement testimony that drug dealers use multiple phones.

During a meet-and-confer the government indicated that it intends to elicit law enforcement officer testimony that drug dealers use multiple phones.  If offered as fact testimony that the witness has personally observed individuals *who are not Mr. Green* possess multiple phones in situations *unconnected to this case*, the evidence is irrelevant under Rule 401 and inadmissible under Rule 402.

If offered as opinion testimony that Mr. Green likely possessed multiple phones (because he was a drug dealer and drug dealers typically possess multiple phones) this is improper lay opinion testimony under Rule 701 and not within any exception.  The government has not provided notice that it seeks to sponsor any witness as an expert qualified in determining whether a particular alleged drug dealer possessed multiple phones based on the habits and practices of drug dealers generally.  As such, the government may not introduce Rule 702 expert opinion testimony on this topic.

Such testimony is also substantially more prejudicial than probative under Rule 403.  The government's obvious purpose in introducing such evidence is to suggest that the -4023 telephone number belonged to Mr. Green—a central issue in the case for the reasons

25

discussed above. Yet evidence of other individuals' possession of multiple phones says nothing about whether the -4203 number in particular belonged to Mr. Green. Admitting such evidence, with the imprimatur of an agent, risks allowing the jury to interpret it as unqualified opinion testimony probative of whether the -4203 number belonged to Mr. Green, when that is precisely what rules 701 and 702 forbid.

### H.  Evidence that OJ Brown (Pops) is the father of OJ Green

In addition to alleged prior drug distributions with OJ Brown addressed above in Section III.B.5, the defense seeks to exclude testimony or other evidence that OJ Brown is Mr. Green's father. First, for the reasons stated above, the specific allegations that Mr. Green and his father engaged in drug dealing together from a residence are inadmissible under Rules 403 and 404(b). Evidence that OJ Brown is Mr. Green's father would serve only to insinuate that the two men engaged in additional drug dealing as family members, hypothetical conduct that poses the identical problems as the specific allegations addressed above.

Second, Mr. Green's principal defense on Count I is that he was not the source of supply for the drugs which C.P. provided to the victim on the day of the alleged fatal overdose. One component of that defense is that multiple drug dealers operated in the geographic region where C.P. and the victim lived. Evidence that OJ Brown and Mr. Green were father and son has the tendency to collapse them together in the jury's mind into a single source of supply, reducing without evidence the number of potential drug sources available to C.P. that day. Because this inference would be without evidentiary support, the fact that Mr. Brown is Mr. Green's father is substantially more prejudicial than probative and should be excluded under Rule 403 for this separate and independent reason.

26

### I. Cell site location information dating long before the first alleged distribution

The distributions charged in this case allegedly occurred on January 21, February 7, March 3, May 17, and September 28, 2022. In a meet-and-confer, the government indicated that it intends to introduce cell site location information (CSLI) from Mr. Green's -9009 telephone number covering the period April 2021 through February 2022. The Court should exclude any CSLI before January 1, 2022. Mr. Green's movements many months prior to the first alleged distribution in this case are irrelevant under Rule 401 and hence inadmissible under Rule 402. Their only possible relevance is as evidence that Mr. Green was engaged in uncharged drug transactions in 2021; such evidence is inadmissible under Rule 404(b) for all of the reasons stated in Section III.B, above. Moreover, even if there were any permissible probative value from showing that Mr. Green had engaged in drug transactions over the eight months prior to the first controlled purchase, the evidence is still substantially more prejudicial than probative because its salient effect would be to further the impermissible character propensity inference. Eight-months' worth of irrelevant and unnecessary cell site location evidence, pertaining to a phone whose ownership is not contested, is also confusing and unnecessarily prolongs the trial.It should therefore also be excluded under Rule 403.

### IV. Conclusion

For the reasons described above, the Court should exclude the above-outlined evidence and/or testimony. A proposed order is attached.

27

Respectfully submitted,


James Wyda
Federal Public Defender

                /s/
_____
Douglas R. Miller, #18309
Ellie C. Marranzini, #817525
Assistant Federal Public Defenders
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770-4510
(301) 344-0600
(301) 344-0019 (fax)
Email: douglas_miller@fd.org
           ellie_marranzini@fd.org