In the United States District Court
For the District of Maryland

| | | |
|---|---|---|
| **United States of America** | * | |
| v. | * | No. DKC-22-429 |
| **OJ Rashad Green** | * | |

\* \* \* \* \* \* \* \* \* \*

## Motion Requesting Order Precluding Case Agent from Communicating with Witnesses During Trial

OJ Rashad Green, by and through undersigned counsel, respectfully moves for an Order precluding the government's designated case agent, Detective Cheyann Harris, from communicating with witnesses during trial. The Court has broad discretion to enforce the requested relief pursuant to its general powers to manage the conduct of trial, as well as Federal Rules of Evidence 611 and 615. Such an order is warranted in this case, and necessary to protect Mr. Green's Sixth Amendment right to a fair trial.

### I.     Relevant Factual Background

#### A. Detective Harris's role in the case

Detective Cheyann Harris is employed by the Charles County Sheriff's Office. Between November 2019 and October 2022, she was detailed as a Task Force Officer with the Drug Enforcement Administration (DEA). Exhibit 1, Affidavit in Support of Material Witness Warrant, at ¶1. In December of 2021, Det. Harris began investigating Mr. Green (aka "ICE"). That investigation culminated in the federal indictment in this case, returned in December of 2022. ECF No. 1.[1] By that time, Det. Harris was no longer detailed to the

---

[1] A superseding indictment was filed on August 1, 2024, and a second superseding indictment on January 30, 2025. ECF Nos. 51, 148. Det. Harris testified before the grand jury on December 14, 2022, and January 30, 2025.

1

DEA, but she has remained actively involved in this case. She and the government identify her as "one of the lead investigators in the prosecution of [Mr. Green]." Exh. 1 at ¶2.

The government has indicated that Det. Harris will serve as its case agent during trial and will be seated at government counsel table. The government has also indicated that it intends to have Det. Harris testify twice in its case-in-chief—first, early on, in connection with the controlled buys that are the subject of counts two through five, and again, later, once other evidence in the case becomes narratively relevant.[2] A key aspect of Det. Harris's involvement in the investigation is that she met with C█████ P███—the government's essential witness for count one—on multiple occasions, including in February and April of 2022. According to Det. Harris, Mr. P████ had "some communication with law enforcement throughout 2022 and he had occasional contact with investigators in 2023." Exh. 1 at ¶6. In January of 2023, he testified before the grand jury. *Id.* It appears that, despite their efforts, the prosecution team had little to no contact with Mr. P████ after that, *see id.*, until a few days ago.

   B. Mr. P█████'s evolving story

Since at least the summer of 2024, it has been clear that this case is heading to trial because the defense strongly contests count one. It has also been clear that the heart of Mr. Green's defense case is that Mr. P████ lied when he told law enforcement that he obtained the drugs in question from Mr. Green. This has been clear at least since October 3, 2024, when Mr. Green filed a Motion to Dismiss Count One of Superseding Indictment. ECF No. 63. Through briefing and at the December 13, 2024 motions hearing, the defense presented

---

[2] While the defense does not know the government's plans in detail, is the defense's understanding that the second round of testimony will relate primarily to the overdose-death investigation that is the subject of count one.

evidence strongly suggesting that the -4203 number Mr. P▮▮▮ attributed to his seller—and which he claimed belonged to Mr. Green—in fact belonged to an individual who identified herself as ▮▮▮▮▮▮▮▮.

Since that time, the defense's evidence that the -4203 number belonged to ▮▮▮▮ ▮▮▮▮▮▮▮ has only grown stronger, via records that have been produced to the government in reciprocal discovery.[3] At trial, the defense had intended to introduce these records, along with other evidence, to establish that Mr. P▮▮▮ was lying when he identified -4203 as Mr. Green's phone number.

In January of 2025, the government sought and obtained a material witness warrant for Mr. P▮▮▮. On January 14, 2025, United States Marshals Service and Charles County Sheriff's Office personnel arrested Mr. P▮▮▮ in a hotel room in Waldorf, Maryland. Exh. 2, at p. 5. Det. Harris was present for the arrest and attendant search of the hotel room. T▮▮ T▮▮▮▮, Mr. P▮▮▮'s spouse or girlfriend, was also present in the hotel room.

On January 7, 2025, Mr. Green filed a discovery correspondence pertaining to a cell phone extraction that had been obtained by Charles County Sheriff's Officers from a search warrant executed on February 8, 2022. *See* ECF No. 112. The government subsequently agreed to produce this and another phone extraction from the same search warrant execution. The defense received access to extractions on January 31, 2025, and immediately identified evidence that the -4203 number was being used by someone identifying herself as ▮▮▮▮▮. On January 31, 2025, defense counsel informed government counsel of the nature of this evidence. On February 2, 2025, defense counsel sent a printout of the extraction's -4203 to the government in support of a reiterated request for additional related discovery items.

---

[3] The defense provided discovery on January 22, January 30, February 3, and February 10, 2025.

Mr. P▇ was interviewed by members of the prosecution team, including Det. Harris, on February 1 and February 3, 2025. On February 1, 2025, Mr. P▇ was shown certain photographs by the government. On February 3, 2025, Mr. P▇ was transported to the federal courthouse by members of the Charles County Sheriff's Office, including Det. Harris. There, he met with members of the prosecution team, and was shown certain additional photographs by the government, namely three photographs of contacts from Mr. P▇'s phone taken in 2022. At that meeting, Mr. P▇ provided a version of events that is markedly different from any of his prior statements—a version that, remarkably, fits the new evidence the defense disclosed to the government in 2024 and 2025 that exposed his earlier lies. The recent statements fundamentally change Mr. P▇'s version of events, and therefore fundamentally change the government's theory of the case.

### C. Det. Harris's conduct with other witnesses

Det. Harris has interviewed numerous witnesses in this case. Some of these witnesses have been people on whom Det. Harris has executed search warrants, or against whom she had a basis to file criminal charges. Instead of pursuing criminal charges, she has given these witnesses the opportunity to work for her by collecting evidence of drug transactions by Mr. Green and others.

One of these witnesses is ▇▇▇, who was detained in February of 2022 and interviewed by Det. Harris. The interview concluded with ▇▇ agreeing to continue working with law enforcement in exchange for the return of her towed vehicle and cell phone, as well as the ability to avoid criminal charges. Det. Harris encountered ▇▇ again in August of 2024, when Det. Harris participated in the execution of a search warrant at ▇▇'s residence. Following the seizure of drugs and other contraband, Det.

4

Harris and another officer interviewed ▮▮▮▮ about topics unrelated to Mr. Green's case. Towards the end of the interview, Det. Harris said to ▮▮▮▮, "Obviously, I'm always curious about Ice's case. He's about to go to trial, so if we can have anything that'll help…" Exh. 3, Audio file. ▮▮▮▮ shared that Mr. Green's lawyer had been calling her, to which Det. Harris responded, "What the fuck does she want?" ▮▮▮▮ said the lawyer asked her questions about people's names. Det. Harris then said, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[4]

## II.   Argument

### A. Legal Standard

The Court has broad discretion to exclude witnesses from the courtroom and to issue additional orders prohibiting witnesses from disclosing trial testimony to other witnesses. This discretion derives from its general powers to manage the conduct of trial, as well as Federal Rules of Evidence 611 and 615.

Rule 611 instructs the Court to exercise "reasonable control over the mode and order of examining witnesses and presenting evidence so as to . . . make those procedures effective for determining the truth[,]" and for other reasons. Fed. R. Evid. 611(a).

Rule 615 provides for witness sequestration. The rule authorizes the Court, on its own or on a party's request, to exclude witnesses from the courtroom so they cannot hear other witnesses' testimony. Fed. R. Evid. 615(a). The sequestration rule "is designed to discourage and expose fabrication, inaccuracy, and collusion." *United States v. Rhynes*, 218 F.3d 310, 317 (4th Cir. 2000) (en banc); *see also United States v. McMahon*, 104 F.3d 638, 643

---

[4] Mr. Green disputes this.

(4th Cir. 1997) (explaining that rule is meant "to prevent the possibility of one witness shaping his testimony to match that given by other witnesses at the trial"). "Scrupulous adherence to this rule is particularly necessary in those cases in which the outcome depends on the relative credibility of the parties' witnesses." *United States v. Farnham*, 791 F.2d 331, 335 (4th Cir. 1986).

Rule 615(a) "does not authorize excluding . . . one officer or employee of a party that is not a natural person if that officer or employee has been designated as the party's representative by its attorney." Fed. R. Evid. 615(a)(2). "Under this exception, the district court *may* allow the government's chief investigating agent"—that is, the case agent—"to remain in the courtroom throughout the proceedings, even if he is expected to testify." *Farnham*, 791 F.3d at 334 (emphasis added). But while Rule 615(a)(2) "'does not authorize excluding' a party's representative, it also does not expressly prohibit courts from excluding the representative." *United States v. Smith*, 108 F.4th 872, 881 (D.C. Cir. 2024). "This is a subtle difference that suggests the Court may still 'have discretion to exclude these individuals so long as that power derives from a source other than Rule 615, such as the court's general powers to manage the conduct of trial.'" *Bradshaw v. Perdue*, 319 F. Supp. 3d 286, 288 (D.D.C. 2018) (quoting 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure: Evidence § 6425). For that reason, numerous courts "have held sequestration of a Government agent for limited purposes to be appropriate." *United States v. Vaughn*, No. CR 14-23 (JLL), 2016 WL 3406228, at *7 (D.N.J. June 14, 2016) (collecting cases, including from the Third and Sixth Circuits); *see also, e.g.*, *Bradshaw*, 319 F. Supp. 3d at 288-90 (ordering case agent sequestered and collecting cases that have held courts "have discretion to exclude a Rule 615(b) witness"—i.e., a government case agent—"pursuant to

6

the Court's general powers to manage the conduct of trial or Rule 611"); *United States v. Teman*, 465 F. Supp. 3d 277, 322 (S.D.N.Y. 2020) ("The court has *discretion*, under this exception, to exempt the government's chief investigative agent from sequestration." (emphasis added)). In fact, the Fourth Circuit has held a district court abused its discretion by "refusing to sequester [one of the government's two case agents], if not during the entire trial, at least during the testimony of his colleague." *Farnham*, 791 F.2d at 335.

Rule 615(b) also invests district courts with authority to "prohibit disclosure of trial testimony to witnesses who are excluded from the courtroom" and "prohibit excluded witnesses from accessing trial testimony." More broadly, district courts have substantial discretion to order other relief designed to achieve the same goals as Rule 615, i.e., "decreas[ing] the risk that witnesses' testimony 'will be influenced by hearing what other witnesses have to say, and . . . increas[ing] the likelihood that they will confine themselves to truthful statements based on their own recollections.'" *Stuart v. Cty. of Riverside*, 2024 WL 3086634, at *4 (C.D. Cal. June 14, 2024) (quoting *Perry v. Leeke*, 488 U.S. 272, 281-82 (1989)). That "discretion . . . sweep[s] more broadly than the Rule's text requires," and it entails the authority "to fashion orders that govern witness interactions beyond the walls of the courtroom." *Teman*, 465 F. Supp. 3d at 323, 325; *see also, e.g.*, *United States v. De Jongh*, 937 F.2d 1, 3 (1st Cir. 1991) ("[A] district court possesses considerable discretion to make prophylactic orders designed to curb possible trial abuses.").

Among other things, courts may in their discretion "prohibi[t] discussions between witnesses," i.e., order that witnesses "not discuss the case among themselves or anyone else, other than the counsel for the parties." *Rhynes*, 218 F.3d at 317 (emphasis omitted). Courts issue such orders frequently. *See, e.g.*, *United States v. Sheffler*, 2021 WL 2742742, at *1

7

(C.D. Ill. July 1, 2021) (ordering that witnesses "should not read transcripts of the trial testimony of other witnesses or otherwise be informed of other witnesses' trial testimony"); *United States v. Davis*, 2018 WL 6112410, at *6 (E.D.N.C. Nov. 21, 2018) (Gates, J.) ("All trial witnesses shall be prohibited from revealing previous trial testimony to any witnesses who have not yet testified."); *United States v. Mitchell*, 2022 WL 766441, at * (E.D.N.C. Mar. 11, 2022) (Swank, M.J.) ("Each witness is prohibited from discussing previous trial testimony with any other witness who has yet to testify at trial."); *United States v. Kail*, 2021 WL 261135, at *14 (N.D. Cal. Jan. 26, 2021) ("The Court ORDERS all counsel to admonish witnesses that they are not to read trial transcripts or to discuss the case and their testimony with anyone other than counsel."); *United States v. Kindle*, 925 F.2d 272, 275 (8th Cir. 1991) (noting that district court ordered DEA case agents not to communicate with sequestered witnesses during trial). The Fourth Circuit has even indicated that "ordinarily," "it would seem proper" that "witnesses be instructed not to discuss their testimony" with anyone else. *See Milanovich v. United States*, 275 F.2d 716, 720 (4th Cir. 1960). Such orders can ensure that the purpose of the sequestration rule is not indirectly defeated when courtroom testimony and events are shared with witnesses who have not yet testified. *See United States v. Greschner*, 802 F.2d 373, 376 (10th Cir. 1986). Courts may direct these orders to all witnesses, including government case agents. *See, e.g., Teman*, 465 F. Supp. 3d at 324-25 (noting that, although district court did not direct case agent to refrain from discussing testimony with witnesses, it "ha[s] the discretion" to do so if a defendant requests such an order, which *Teman* defendant did not do).

### B. The Court should enter an order precluding Det. Harris from communicating with witnesses once trial begins.

The government has indicated it intends to call Det. Harris, its lead investigating agent, to testify at trial. Although, as explained above, this Court has discretion to order Det. Harris sequestered during other witnesses' testimony, at least for now Mr. Green does not request such relief. Instead, he asks the Court to take the much more modest step of prohibiting Det. Harris from have any case-related contact with any other trial witnesses after the trial begins. Specifically, the Court should direct Det. Harris not to discuss any aspect of the case with other witnesses, participate in preparing other witness to testify, or transport any other witnesses to or from the courthouse. Several considerations support this request.

First, as explained above, there is reason to believe that Mr. P█████—the central witness for the death-results allegation in count one—has previously altered his version of events after, and as a result of, speaking with Det. Harris. In his initial interviews with law enforcement, in 2022, and his Grand Jury testimony in 2023, Mr. P█████ said he obtained the drugs in question from Mr. Green, and only Mr. Green; he made no mention of an additional seller, nor did he suggest that the -4203 phone number that he attributed to Mr. Green was ever used by anyone else. The defense subsequently presented the government with evidence demonstrating that the -4203 number belonged to a ███████████. When the prosecution team, including Det. Harris, subsequently met with Mr. P█████, he changed his story, alleging for the first time that the -4203 number was shared by Mr. Green, █████, and █████ and that all three regularly used that number to communicate him. Thus, it appears Mr. P█████ is liable to amend his story when presented or confronted with previously unknown information. Allowing Mr. P█████ to change his version of events

9

once again, based on witnesses' trial testimony or evidence presented at trial, would seriously undermine the fairness of Mr. Green's trial.

Second, Det. Harris has a demonstrated history of sharing case-related information with witnesses, and doing so in a way that is likely to prejudice those witnesses against Mr. Green. As explained above, in August 2024 Det. Harris interviewed ▬▬▬, who is expected to testify in this case, and told her that ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ The term ▬▬▬ has undeniably negative connotations, and using that term to describe Mr. Green may well have poisoned this witness' (and others') view of Mr. Green. Det. Harris's decision to discuss the case with a potential witness is especially alarming because the fact she related to ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ is untrue. Det. Harris' past conduct raises a real concern that, if allowed to discuss the case with witnesses during trial, she will bias those witnesses against Mr. Green, thereby slanting their testimony.

Even if Det. Harris would not attempt to mold witnesses' testimony in bad faith, a no-contact order is still necessary. Rule 615 guards against the danger that, "consciously or subconsciously," a witness may "shape [the] testimony" of other witnesses by discussing a case mid-trial. *See Bradshaw*, 319 F. Supp. 3d at 289. It is especially important to prevent that kind of improper influence in a case like this one, where "the outcome depends on the relative credibility of the parties' witnesses." *Farnham*, 791 F.2d at 335. Allowing Det. Harris to communicate with witnesses during the trial, and thereby possibly alter their testimony, threatens to deprive Mr. Green of his right to a fair trial.

10

### III.  Conclusion

The Court should enter an order instructing Det. Harris that, once trial begins, she may not have case-related contact of any kind with any potential witnesses. In particular, the Court should direct Det. Harris not to discuss this case with any other witnesses, participate in preparing any witnesses to testify, or transport witnesses to or from the courthouse.

James Wyda
Federal Public Defender

_____/s/_____
Douglas R. Miller, #18309
Ellie C. Marranzini, #817525
Assistant Federal Public Defenders
6411 Ivy Lane, Suite 710
Greenbelt, MD 20770-4510
(301) 344-0600
(301) 344-0019 (fax)
Email: douglas_miller@fd.org
ellie_marranzini@fd.org